**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ROBERT ADAIR, ET AL.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **Civil Action No. 4:25-cv-00845-O** |
| **v.** | § | |
| | § | |
| **MARATHON DIGITAL HOLDINGS, INC.,** | § | **(Consolidated with Civil Action Nos. 4:26-CV-00323-O and 4:26-CV-00534-O)** |
| | § | |
| | § | |
| **Defendant.** | § | |

---

**MARA'S BRIEF IN SUPPORT OF MOTION TO EXCLUDE EXPERTS, DISMISS PERSONAL INJURY CLAIMS AND ENTER *LONE PINE* ORDER GOVERNING ANY FUTURE CLAIMS**

---

Defendant MARA Holdings, Inc. (f/k/a Marathon Digital Holdings, Inc.) ("MARA") files this Brief in support of its Motion to Exclude Experts, Dismiss Personal Injury Claims and Enter a *Lone Pine* Order Governing Any Future Claims ("Motion").[1] At the outset, the Court should exclude any expert opinions or testimony proffered by Plaintiffs due to their failure to timely designate any experts by the applicable deadline. In addition, the court should dismiss all personal injury claims, with prejudice, for failure to serve either expert reports or underlying discovery. In the alternative, the Court should dismiss all of Plaintiffs' personal injury claims, without prejudice, and enter a Lone Pine Order specifying the requirements for asserting those claims in the future.

[1] As described below, *Lone Pine* orders, named after *Lore v. Lone Pine Corp.*, No. L-33606-85, 1986 WL 637507 (N.J. Super. Ct. Law Div. Nov. 18, 1986), are a well-established exercise of case management authority routinely used to require threshold proof of injury and causation in complex tort litigation.

# TABLE OF CONTENTS


**TABLE OF AUTHORITIES ..... ii**

**I. INTRODUCTION & SUMMARY OF MOTION ..... 1**

A. SCOPE OF MOTION. ..... 1

B. PROCEDURAL HISTORY ..... 2

i. Plaintiffs' Operative Pleading. ..... 2

ii. Plaintiffs' Discovery Responses. ..... 3

C. REQUESTED RELIEF. ..... 6

**II. ARGUMENT & AUTHORITY ..... 7**

A. PLAINTIFFS' PERSONAL INJURY CLAIMS ARE GOVERNED BY HAVNER. ..... 7

i. Cerny provides a road roadmap for proof of causation in private nuisance exposure cases. ..... 8

B. THE COURT SHOULD EXCLUDE ANY EXPERT TESTIMONY OFFERED BY PLAINTIFFS BECAUSE THEY FAILED TO TIMELY DESIGNATE EXPERTS. ..... 11

C. PLAINTIFFS' PERSONAL INJURY CLAIMS SHOULD BE DISMISSED UNDER RULE 37. ..... 13

i. Dismissing Plaintiffs' personal injury claims is a just and reasonable sanction. ..... 14

D. IN THE ALTERNATIVE, THE COURT SHOULD ENTER A LONE PINE ORDER. ..... 17

1. Lone Pine orders enforce Rule 11's pre-suit investigation requirement. ..... 19

2. Lone Pine orders serve to identify and cull meritless claims. ..... 20

3. Lone Pine orders prevent disproportionate discovery burdens. ..... 21

4. Lone Pine orders address asymmetric information. ..... 22

5. Judicial economy and docket management. ..... 22

6. Prevent filing of multiple Cases for settlement leverage. ..... 23

**III. CONCLUSION ..... 23**




4908-0169-4396 v.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 2000 ExxonMobil Release Litig.*,
2003 WL 27428596 (M.D. La. Feb. 13, 2003) ....................20, 22

*Acuna v. Brown & Root, Inc.*,
200 F.3d 335 (5th Cir. 2000) .................... *passim*

*Andres v. Town of Wheatfield*,
621 F.Supp.3d 395 (W.D.N.Y. 2022) ....................21

*Ashford v. Hercules, Inc.*,
2015 WL 6118387 (S.D. Miss. Oct. 16, 2015) ....................19

*Baker v. Anschutz Exploration Corp.*,
No. 11-CV-6119-CJS, 2013 WL 3282880 (W.D.N.Y. June 27, 2013) ....................19

*Baker v. Chevron USA, Inc.*,
2007 WL 315346 (S.D. Ohio Jan.30, 2007) ....................21

*Baker v. Energy Transfer Co.*,
No. 10-09-00214-CV, 2011 WL 4978287 (Tex. App.—Waco Oct. 19, 2011, pet. denied) ....................9

*Barrett v. Atl. Richfield Co.*,
95 F.3d 375 (5th Cir. 1996) ....................12

*Cano v. Everest Minerals Corp.*,
362 F.Supp.2d 814 (W.D. Tex. 2005) ....................10

*Cerny v. Marathon Oil Corp*,
480 S.W.3d 612 (Tex. App.—San Antonio 2015, pet. denied) ....................8, 9

*Conklin v. Corteva, Inc.*,
782 F.Supp.3d 268 (E.D.N.C. 2025) ....................20, 22

*Cotroneo v. Shaw Env't & Infrastructure, Inc.*,
639 F.3d 186 (5th Cir. 2011) ....................10

*CQ, Inc. v. TXU Min. Co., L.P.*,
565 F.3d 268 (5th Cir. 2009) ....................11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ....................8

*Everest Reinsurance Co. v. Cox*,
350 F.R.D. 541 (N.D. Tex. 2025) ........................................ 11, 12

*F.D.I.C. v. Conner*,
20 F.3d 1376 (5th Cir. 1994) ........................................ 14

*Firstenberg v. Monribot*,
350 P.3d 1205 (N.M. App., 2015) ........................................ 10

*Hamer v. Liva Nova Deutschland GmbH*,
994 F.3d 173 (3d Cir. 2021)........................................ 18

*In re Hanford Nuclear Reservation Litig.*,
292 F.3d 1124 (9th Cir. 2002) ........................................ 10

*Harmon v. Georgia Gulf Lake Charles L.L.C.*,
476 Fed. Appx. 31 (5th Cir. 2012)........................................ 11, 12

*Helena Chem. Co. v. Cox*,
664 S.W.3d 66 (Tex. 2023)........................................ 9

*Holcombe v. United States*,
516 F. Supp. 3d 660 (W.D. Tex. 2021)........................................ 8, 10

*Kamatani v. Benq Corp*.,
No. CIV.A. 2:03-CV-437, 2005 WL 2455825 (E.D. Tex. Oct. 4, 2005) ........................................ 15

*Keplar v. Google, LLC*,
346 F.R.D. 41 (N.D. Tex. 2024) ........................................ 14

*Law Funder, L.L.C. v. Munoz*,
924 F.3d 753 (5th Cir. 2019) ........................................ 14, 15

*Martinez v. City of San Antonio*,
40 S.W.3d 587 (Tex. App.—San Antonio 2001, pet. denied) ........................................ 9

*McManaway v. KBR, Inc.*,
265 F.R.D. 384 (S.D. Ind. 2009)........................................ 21

*McMunn v. Babcock & Wilcox Power Generation Group, Inc.*,
869 F.3d 246 (3d Cir. 2017)........................................ 10

*In re Meridia Prods. Liab. Litig.*,
328 F. Supp. 2d 791 (N.D. Ohio 2004)........................................ 8

*Merrell Dow Pharm., Inc. v. Havner*,
953 S.W.2d 706 (Tex. 1997)........................................ *passim*

*Modern Holdings, LLC v. Corning, Inc.*,
No. 5:13-CV-405-GFVT, 2015 WL 14079821 (E.D. Ky. Sept. 28, 2015) ..................... *passim*

*Murray v. Motorola, Inc.*,
339 A.3d 152 (D.C. 2025) ....................................................................................10

*Newman v. Motorola, Inc.*,
218 F. Supp. 2d 769 (D. Md. 2002), aff'd, 78 Fed. Appx. 292 (4th Cir. 2003) ......................10

*Newsome v. Int'l Paper Co.*,
123 F.4th 754 (5th Cir. 2024) ....................................................................................7

*Rios v. Tex. Christian Univ.*,
348 F.R.D. 606 (N.D. Tex. 2025)...........................................................................11, 13

*Seaman v. Seacor Marine L.L.C.*,
326 F. App'x 721 (5th Cir. 2009) ...............................................................................8

*In re Silica Prods. Liab. Litig.*,
398 F. Supp. 2d at 675-76.....................................................................................24

*In re Vioxx Prods. Liab. Litig*.,
557 F.Supp.2d 741 (E.D. La. 2008)..........................................................................21

*In re Vioxx Prods. Liab. Litig.*,
MDL No. 1657, 2012 U.S. Dist. LEXIS 56309 (E.D. La. Apr. 23, 2012) .............................20

**Rules**

Fed. R. Civ. P. 11 ...........................................................................................6, 20

Fed. R. Civ. P. 26(a)(2)(D) ...............................................................................11, 13

Fed. R. Civ. P. 26(g) ...............................................................................................4

Fed. R. Civ. P. 34(a) ...............................................................................................4

Fed. R. Civ. P. 37(b). ...............................................................................................4

Fed. R. Civ. P. 37(b)(2)(A)(v) .........................................................................6, 13, 14

Fed. R. Civ. P. 37(c)(1)......................................................................................11, 13

# I. INTRODUCTION & SUMMARY OF MOTION

## A. Scope of Motion.

MARA operates a Cryptomine in Hood County on land leased at an existing power plant. Plaintiffs,[2] residents of Hood County, allege that sound and vibration emanating from MARA's facility (the "Alleged Sound") constitute a private nuisance. Plaintiffs claim that the alleged nuisance purportedly causes numerous diverse ailments (the "personal injury claims"), diminished property values, and disturbance to livestock, pets, and wildlife.

This Motion addresses the array of common medical ailments Plaintiffs allege are caused by sound and vibration from MARA's operations. Plaintiffs do not plead, or cite proof, of specific facts that would allow a fact finder to determine that these alleged personal injuries can be caused by any level of sound, much less the unspecified level alleged to be generated by MARA. Plaintiffs' deficient fact pleading is compounded by their delinquency in answering discovery—violating multiple court orders and culminating in a failure to designate any expert witnesses.

MARA moves to preclude Plaintiffs from offering any expert witness or testimony because Plaintiffs failed to designate any experts as required by the Court's Scheduling Order. [3] In addition, MARA moves to dismiss all personal injury claims, with prejudice, as an appropriate and proportional sanction for Plaintiffs' ongoing discovery deficiencies. Alternatively, if this Court is

---

[2] Because this case now involves three consolidated actions, some clarity is needed with respect to this term. First, the nine newest plaintiffs—Jeffrey Seider, Leann Seider, William Seider, Breana Seider, Zachary Stewart, Lindsey Stewart, Cherie Gore, Bryce Henrikson, and Jill Henrikson (the "Seider Plaintiffs")—do not allege any specific medical conditions, diagnoses, or physical injuries in the Complaint. Although the Complaint contains generalized allegations that all plaintiffs have suffered physical and mental health consequences, it does not identify any personal injury claims unique to the Seider Plaintiffs. Accordingly, for purposes of this Motion, MARA assumes that the Seider Plaintiffs are not asserting personal injury claims and therefore excludes them from the defined term "Plaintiffs" as this Motion seeks relief solely with respect to the personal injury claims asserted by the remaining plaintiffs. If discovery later establishes that one or more of the Seider Plaintiffs are, in fact, asserting personal injury claims, MARA reserves the right to include those plaintiffs within the scope of the relief sought.

[3] Instead, plaintiffs filed a motion to extend deadlines, misrepresenting that it was unopposed when plaintiffs never mentioned such a motion to counsel for Marathon.

not inclined to dismiss the claims with prejudice, MARA moves for entry of a *Lone Pine* Order requiring Plaintiffs to make a preliminary showing of causation before pursuing any medical claims allegedly caused by MARA.

**B. Procedural History.**

**i. Plaintiffs' Operative Pleading.**

Plaintiffs claim that an unspecified type and level of noise, that they attribute only to MARA, causes an array of common medical problems in both animal and man. Allegations range from dog hair loss and horse death to human stroke, tinnitus, vertigo, cardiac hypertension, heart attack, hearing loss, insomnia, gastrointestinal issues, acute muscle pain, spasms—to name a few. *See* Plaintiffs' Amended and Consolidated Complaint (the "Complaint") at ¶¶ 67-93 (Dkt. 54-1).

As discussed in MARA's Motion to Dismiss Certain Claims in the Amended and Consolidated Complaint (Dkt. 56, 57), Plaintiffs fail to allege sufficient facts to support their allegations. Plaintiffs plead no facts asserting a link between common maladies and any level of noise or vibration, much less one specific to MARA's operations. The Complaint is devoid of facts qualifying or quantifying the alleged sound coming from MARA's operations. Plaintiffs fail to describe any scientific method to distinguish sound allegedly attributable to MARA from other ambient or aggregate sources of sound. Further, they cite no studies, government reports, regulatory warnings, or proclamations suggesting that any level of noise or vibration causes the injuries alleged, much less a level that matches MARA operations. They offer no explanation of how sound waves can impact the human or animal body in such a way as to cause the injuries or diseases alleged (biological plausibility). *See, e.g.,* Complaint at ¶ 46-52, 57, 67–102.

Plaintiffs' deficient pleading is relevant for two reasons. First, Plaintiffs' failure to plead necessary elements of their personal injury claims demonstrates why dismissing those claims is an

appropriate sanction for Plaintiffs' failure to provide Court-ordered discovery. Second, Plaintiffs' failure to plead facts to support proximate cause underscores the need for a *Lone Pine* Order requiring certain evidence before reinstating personal injury claims.

**ii. Plaintiffs' Discovery Responses.**

At an April 10, 2026, hearing on MARA's Motion to Compel, Plaintiffs' counsel represented that nearly all responsive medical records had already been obtained and that only a small number remained outstanding. *See* Appx. at Ex. A, p. 6:24–7:9. Counsel further represented that Plaintiffs expected to produce essentially complete medical discovery within approximately two weeks. *Id*. at 8:18-23. Based on those representations, the Court set deadlines requiring Plaintiffs to produce responsive documents and supplement their discovery responses—deadlines that have long since passed. *Id*. at 9:17-10:3.[4]

Plaintiffs' supplemental discovery responses lack evidentiary support for their alleged personal injuries. Some Plaintiffs have failed to produce any medical records.[5] Others have produced minimal or incomplete records that make no reference to any connection between ordinary diseases of life and MARA's operations.[6]

---

[4] Court setting deadlines of April 30, 2026, for supplemental responses to interrogatories and request for admissions, and April 24, 2026, for supplemental document production.

[5] For example, some Plaintiffs who allege personal injuries in the Complaint—including Robert Adair (tinnitus and anxiety), Donna Adair (tinnitus and anxiety), Danny Lakey (insomnia, fatigue, memory loss, headaches), Deanna Lakey (vertigo, dizziness, fractures from falling due to instability), Daniel Rohde (anxiety and discomfort), Nancy Rohde (hearing loss, tinnitus, migraines), and Beverley Potts (hearing loss, anxiety, insomnia)—failed to produce any medical records. *See* Appx. at Ex. D, pp. 101, 109, 111-112, 121-122, 124-125, 128-129, 132-133, 136-137, 139, 141, 143 (indicating no responsive records found in response to RFP No. 2).

[6] Multiple Plaintiffs—including Lisa Blankenship, Beverley Potts, Danny Lakey, Daniel Rohde, Nancy Rohde, Robert Adair, and Donna Adair—have expressly admitted that they possess no medical records showing any personal injury caused by MARA. *See* Appx. at Ex. C, pp. 31, 35, 41-42, 46-47, 53, 65, 78. Other Plaintiffs who produced some medical records have produced only limited materials that do not support a link between the alleged sound exposure and the wide-ranging injuries claimed in the Complaint. By way of example, one plaintiff produced only a single physician's note stating that he is currently under medical care and receiving treatment for insomnia, with no additional medical records.

Although Plaintiffs have signed authorizations for the release of medical records—and MARA is attempting to obtain those records—the process has been difficult and time-consuming (and MARA still does not have a complete set). The burden remains on Plaintiffs to collect and produce their own medical records pursuant to this Court's order (and such records should have been obtained and produced well in advance of this stage of litigation). Fed. R. Civ. P. 34(a); 26(g); 37(b).

Plaintiffs' claims are contradictory. Despite asserting injuries Plaintiffs characterize as severe and debilitating, some admit they have no medical appointments or treatments scheduled for injuries they attribute to MARA.[7] Many admit that no medical professional has diagnosed them with a condition they are alleged to have in the Complaint.[8]

In response to MARA's interrogatories, rather than providing specific, individualized descriptions supported by medical evidence, many Plaintiffs offer generalized and conclusory assertions of common medical conditions (and, in some instances, offer no substantive information at all).[9] Critically, Plaintiffs have failed to identify any expert or even a treating physician opinion (or other competent evidence) asserting a causal connection between MARA's Alleged Sound and Plaintiffs' wide-ranging injuries.[10]

---

[7] Some Plaintiffs—including Amy Rawle, Wes Rawle, David Blankenship, Lisa Blankenship, Larry Potts, Beverley Potts, Danny Lakey, Deanna Lakey, Daniel Rohde, Nancy Rohde, Robert Adair, and Donna Adair—have admitted they have no scheduled or ongoing medical appointments related to the injuries they attribute to MARA, despite alleging serious and injuries. *See* Appx. at Ex. C, pp. 29-30, 33-34, 39-40, 44-45, 51-52, 57-58, 60-61, 63-64, 68-69, 72-73, 76-77, 82-83.

[8] For example, many Plaintiffs who allege hearing loss or auditory injury in the Complaint—such as Amy Rawle, Wes Rawle, Lisa Blankenship, Larry Potts, Karen Pearson, Danny Lakey, Deanna Lakey, Nancy Rohde, Robert Adair, and Donna Adair—admitted they have not been diagnosed with any issues with their ability to hear. *See* Appx. at Ex. C, pp. 36-37, 48-49, 54-55, 58, 66, 70, 74, 79-80, 84-85.

[9] For example, although the Complaint provides detailed and dramatic descriptions of individualized injuries, many Plaintiffs' interrogatory responses reduce those claims to generalized and conclusory statements such as "anxiety," "loss of sleep," or "headaches," without identifying diagnoses, medical providers, testing, or treatment. *See, e.g.*, Appx. at Ex. B, pp. 14, 16-17, 19-20, 22-23, 25-26.

[10] As explained elsewhere in this Motion, not a single Plaintiff has identified any retained expert, produced any expert report. Plaintiffs have uniformly failed to produce expert files, CVs, opinions, or analysis that would support a causal

Discovery produced to date includes none of the evidence needed to support key elements on which Plaintiffs have the burden of proof. For example, Plaintiffs have produced no sound measurements, personal logs, or contemporaneous documentation of excessive sound they claim is causing their injuries. Although their Complaint alleges that Plaintiffs are in possession of various sound measurements that would support their allegations, they have produced no such evidence in response to discovery.[11] Plaintiffs likewise fail to produce any records or materials relating to consulting or testifying experts they may have engaged.[12]

Finally, Plaintiffs' failure to designate any expert witnesses confirms the lack of support for their personal injury claims. Pursuant to the governing scheduling order, Plaintiffs' initial expert designations and reports were due June 26, 2026. (Dkt. 19). Instead of serving the required materials, Plaintiffs filed another motion to continue scheduling order deadlines (Dkt. 49) that they misrepresented as being unopposed. (Dkt. 58). Plaintiffs argue, in part, that existing expert deadlines are unworkable due to delays in their experts' ability to inspect MARA's facility—despite never requesting such an inspection or serving a Rule 34 request for entry onto MARA's property. *Id*.

Before filing suit, Plaintiffs were required to have basic information regarding the nature of the alleged medical injuries and plausible causation supported by admissible expert opinion. Fed. R. Civ. P. 11. Although Plaintiffs' Complaint includes an array of ordinary medical conditions Plaintiffs say they will attribute to MARA's operations, discovery thus far has revealed no evidentiary support. It appears there is no support for such allegations—no specific facts pled, no

relationship between environmental noise and the diverse conditions alleged including strokes, cardiac events, neurological disorders, and psychological injuries. *See infra* n. 12.

[11] *See, e.g.*, Appx. at Ex. D, pp. 88-90, 93-95, 97, 113-119 (Plaintiffs stating that no responsive records have been located in response to RFP nos. 5, 19, 26, and 37).

[12] *See, e.g.,* Appx. at Ex. D, pp. 98-99, 102-103, 105-107 (Plaintiffs stating that no responsive records have been located in response to RFP nos. 49-54).

medical evidence, and no expert opinion. The disparity between conclusory claims and evidentiary support merits immediate dismissal of all personal injury or medical claims.

**C. Requested Relief.**

Federal Rule of Civil Procedure 11 requires that factual contentions in a complaint have evidentiary support.[13] Indeed, it expressly requires Plaintiffs to have "at least some information" regarding the nature of their injuries including the "basis for believing that the named defendant[] [is] responsible for" the injuries. *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000) (emphasis supplied). Thus far, Plaintiffs have provided no indication—in their Complaint or discovery responses—of any evidentiary basis for the contention that sound from the MARA facility caused or contributed to their medical conditions. Accordingly, pursuant to Federal Rule of Civil Procedure 37,[14] this Court should dismiss with prejudice Plaintiffs' unsubstantiated personal injury claims as a just and proportional sanction for Plaintiffs' continuing discovery delinquencies and violations of this Court's orders.

If Plaintiffs' personal injury claims are not stricken with prejudice, the Court should dismiss such claims without prejudice and impose certain requirements before they may be reasserted. In complex tort litigation, federal courts may enforce Rule 11's requirements through case management orders (known as *Lone Pine* orders) requiring plaintiffs to make an early threshold evidentiary showing. MARA requests such an order requiring each Plaintiff seeking medical damages to demonstrate a prima facie case of general and specific causation. The *Lone Pine* Order would require an expert affidavit attesting to three points within reasonable medical probability: (1) that there is peer-reviewed epidemiological literature finding a statistically

[13] Although Rule 11 also permits claims that will likely have evidentiary support if specifically so identified, the Complaint does not specifically identify any such claims.
[14] Specifically, Rule 37(b)(2)(A)(v) allows the Court to dismiss this proceeding in whole or in part as a sanction for disobedience of a discovery order.

significant doubling of the risk for each injury allegedly linked to sound and vibration of the kind caused by MARA's operations; (2) that the plaintiff has experienced sound and vibration substantially similar to the subjects of any study finding such a relationship; and (3) each plaintiff's alleged injuries were in fact caused by sound or vibration from MARA's operations. Any plaintiff's failure to present such threshold evidence would result in dismissal of his or her personal injury claims. This relief is merited under existing law and will advance the efficient resolution of this consolidated action.

## II. ARGUMENT & AUTHORITY

### A. Plaintiffs' Personal Injury Claims Are Governed by *Havner*.

This is a diversity case involving state law claims for negligent private nuisance with allegations of personal injuries. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997) is the state law causation standard governing the necessary proof for Plaintiffs' personal injury claims. *See Newsome v. Int'l Paper Co.*, 123 F.4th 754, 761 (5th Cir. 2024) (*Havner* is "Texas substantive law" properly applied to medical causation in diversity case).

Texas substantive law imposes stringent causation requirements in alleged exposure cases when a plaintiff "attempt[s] to demonstrate that exposure to the substance at issue increases the risk of their particular injury." *Havner*, 953 S.W.2d at 715. General and specific causation evidence is necessary when "the injuries themselves are… not immediately obvious and the connection between exposure and injury is not a matter of common sense or everyday experience." *Holcombe v. United States*, 516 F. Supp. 3d 660 (W.D. Tex. 2021) (quoting *In re Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d 791, 798 (N.D. Ohio 2004)). Expert testimony is therefore required to prove

causation to jurors who cannot be expected to understand medical causation themselves. *See id.* (citing *Seaman v. Seacor Marine L.L.C.*, 326 F. App'x 721, 723 (5th Cir. 2009)).[15]

*Havner* is a two-step process. A plaintiff must provide scientific evidence showing that (i) the alleged agent has been shown to cause the injury or disease in question (general causation), and (ii) the agent in fact caused the plaintiff's injury (specific causation). *Havner*, 953 S.W.2d at 714. General causation requires epidemiological studies showing the alleged offending agent poses a risk at least double the risk of developing the injury without the exposure. Specific causation requires properly supported expert testimony that: (i) the plaintiff experienced an exposure of an amount known to cause the disease in question, (ii) other risk factors did not cause the injury or disease in question, and (iii) the exposure caused the injury to the plaintiff. *Havner*, 953 S.W.2d at 720-24.

**i. *Cerny* provides a road roadmap for proof of causation in private nuisance exposure cases.**

*Cerny v. Marathon Oil Corp*, 480 S.W.3d 612, 620 (Tex. App.—San Antonio 2015, pet. denied) applies the *Havner* causation standard to alleged harmful emissions in a private nuisance case. Plaintiffs in *Cerny* sued for negligence and private nuisance alleging that fumes containing toxic chemicals, noxious odors, dust, and noise from defendants' oil and gas operations traveled onto their property and caused new and exacerbated existing health problems as well as property damage. *Id*. at 615. The Cernys attempted to plead around the need for *Havner*-compliant expert testimony by disclaiming recovery for personal injury damages. Instead, they sought recovery for "discomfort rather than disease." *Id*. at 615–16.

[15] Any testimony offered to satisfy the state law causation standard must first pass muster under the federal rules regarding admissibility of expert evidence in Rule 702 of the Federal Rules of Evidence, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny.

After the trial court granted defendants' no evidence motion for summary judgment, the Cernys appealed. *Cerny*, 480 S.W.3d at 617. The San Antonio Court of Appeals focused its analysis on proximate cause, which was common to all claims. *Id.* at 618. The Cernys contended that medical expert testimony was not necessary to raise a fact issue on causation because they only sought recovery for "nuisance symptoms," not personal injury. *Id*. Observing that the Cerny's claims of "migration of [] hazardous materials on to their property" were in the nature of a toxic tort, the court held that "the strict causation standards of *Havner*" apply, which require scientifically-reliable proof of general and specific causation. *Id*. at 620.

*Cerny* is a template for application of *Havner* in cases of alleged negligent creation of private nuisance damages from migration of offending substance(s) or force(s) from one property to another. *Cerny*, 480 S.W.3d 612. Likewise, several other Texas cases apply *Havner* to similar facts. *See Martinez v. City of San Antonio*, 40 S.W.3d 587 (Tex. App.—San Antonio 2001, pet. denied) (plaintiffs alleging public and private nuisance based on alleged exposure to lead-contaminated soil excavated in construction of Alamodome stadium failed to present *Havner*-compliant expert testimony); *Baker v. Energy Transfer Co.*, No. 10-09-00214-CV, 2011 WL 4978287 at *6 (Tex. App.—Waco Oct. 19, 2011, pet. denied) (requirement of expert testimony was "obvious" in nuisance suit stemming from venting of hydrogen sulfide from defendant's natural gas treatment plant); *Helena Chem. Co. v. Cox*, 664 S.W.3d 66 (Tex. 2023) (in negligence suit alleging loss of crops due to drift of aerial herbicide onto adjacent fields, *Havner* governed proof of causation).

Direct exposure to a hazardous "substance" is not a hard-and-fast requirement to trigger toxic tort causation standards. Courts describe toxic torts as injuries arising from exposure to harmful substances or "agents." *See generally, Havner* 953 S.W.2d 706 (using the terms

"substance" and "agent" interchangeably). Several jurisdictions apply toxic tort evidentiary frameworks to claims involving exposure to electromagnetic radiation from electronic devices. *See Firstenberg v. Monribot*, 350 P.3d 1205 (N.M. App., 2015); *Newman v. Motorola, Inc.*, 218 F. Supp. 2d 769 (D. Md. 2002), aff'd, 78 Fed. Appx. 292 (4th Cir. 2003); *Murray v. Motorola, Inc.*, 339 A.3d 152 (D.C. 2025). Injuries resulting from exposure to ionizing radiation are also routinely treated as "toxic torts" including by courts applying Texas law. *See Cano v. Everest Minerals Corp.*, 362 F.Supp.2d 814 (W.D. Tex. 2005) (disapproved of on other grounds); *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186 (5th Cir. 2011); *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124 (9th Cir. 2002); *McMunn v. Babcock & Wilcox Power Generation Group, Inc.*, 869 F.3d 246 (3d Cir. 2017).

Here, the logic underlying toxic tort standards fits Plaintiffs' claims: the causal connection between hypertension or stroke, for example, and prolonged exposure to noise is simply not "a matter of common sense or everyday experience" for a lay juror. *Holcombe*, 516 F.Supp. at 678. There is no doubt hypertension and stroke are associated with many other natural and environmental causes, further confounding potential jurors. *See id*. Even if certain conditions alleged by Plaintiffs could theoretically be associated with some level and types of sound exposure (such as hearing damage or sleep loss), they may also be associated with other causes (like age).

For the above reasons, allowing Plaintiffs to present their claims without *Havner*-compliant expert testimony would be a recipe for jury confusion and prejudice. Plaintiffs' personal injury claims bear all the hallmarks of a toxic tort lawsuit: Plaintiffs allege exposure to a harmful agent; injury resulting from the exposure; and causation that cannot be demonstrated through direct proof. At most, Plaintiffs can "attempt to demonstrate that exposure to [the Alleged Sound] increases the

risk of their particular injury." *Havner*, 953 S.W.2d at 715. Their attempt to do so must comply with *Havner*.

**B. The Court Should Exclude Any Expert Testimony Offered by Plaintiffs Because They Failed to Timely Designate Experts.**

As a threshold matter, the Court should exclude any expert testimony offered by Plaintiffs. Plaintiffs violated Federal Rule of Civil Procedure 26(a)(2)(D) when they failed to make required expert disclosures at the time set by this Court's Scheduling Order. If a party fails to provide information or identify a witness as required by Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). Courts describe this sanction as self-executing and automatic. *See Rios v. Tex. Christian Univ.*, 348 F.R.D. 606, 609 (N.D. Tex. 2025).

The party who failed to disclose bears the burden to prove that its failure was substantially justified or harmless. *Everest Reinsurance Co. v. Cox*, 350 F.R.D. 541, 550 (N.D. Tex. 2025). Four factors guide the Court's exercise of discretion: (1) the explanation of the party for its failure to comply with the court's order, (2) the importance of the excluded testimony, (3) the prejudice to the other party that would arise from allowing the testimony, and (4) the availability of a continuance to cure such prejudice. *Harmon v. Georgia Gulf Lake Charles L.L.C.*, 476 Fed. Appx. 31, 36 (5th Cir. 2012); *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009). Courts consider these factors holistically, not by mechanically counting which side wins the most factors. *Everest*, 350 F.R.D. at 550.

Here, each of the relevant factors weighs in favor of exclusion.

First, Plaintiffs' reference to the number of Plaintiffs in this action (Dkt. 58) does not explain their failure to comply with the Court's deadline. The majority of Plaintiffs have been parties to this suit for more than ten months. To the extent the number of Plaintiffs has complicated discovery, that circumstance is largely of Plaintiffs' own making, as Plaintiffs continued adding new parties during the course of the litigation. Likewise, any purported need for a site inspection does not justify the delay, as Plaintiffs have not yet requested an inspection of MARA's facility.

Second, while expert testimony is presumptively important to Plaintiffs' claims, this point cuts against Plaintiffs. *See Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996) ("the claimed importance of Plaintiffs' expert testimony merely underscores the need for Plaintiffs to have complied with the court's deadlines or at least informed the trial judge in advance if good faith compliance was not possible").

Third, MARA would be prejudiced by a late expert designation. Allowing Plaintiffs to disclose experts after the deadline would force MARA to respond to undisclosed opinions outside the Court schedule, resulting in additional expense, disruption of case preparation, and delays in resolution of the case. *See Barrett*, 95 F.3d at 381.

Fourth, a continuance would not eliminate that prejudice; it would simply shift the cost of Plaintiffs' noncompliance to MARA. *See Barrett*, 95 F.3d at 381 ("it is likely that a continuance would have resulted only in additional delay and would have unnecessarily increased the expense of defending the lawsuit"). Further, a continuance would neither punish Plaintiffs dilatory conduct nor deter similar behavior in the future. *Harmon*, 476 Fed. Appx. at 37.

Because Plaintiffs cannot carry their burden, the Court should exclude any expert testimony Plaintiffs may seek to offer in this action.

### C. Plaintiffs' Personal Injury Claims Should Be Dismissed under Rule 37.

Federal Rule of Civil Procedure 26(a)(2) requires a party to disclose the identity of any witness it may use at trial to present expert testimony. For retained or specially employed experts, that disclosure must be accompanied by a written report prepared and signed by the witness. Expert disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

This Court is authorized to dismiss Plaintiffs' personal injury claims for failure to timely disclose expert testimony. Fed. R. Civ. P. 26(a)(2)(D). Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Courts describe this sanction as self-executing and automatic. *See Rios v. Tex. Christian Univ.*, 348 F.R.D. 606, 609 (N.D. Tex. 2025). "In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: … (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi)[,]" which specifically include "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v).

Rule 37(b)(2) also authorizes district courts to impose sanctions when a party "fails to obey an order to provide or permit discovery." Among the sanctions expressly permitted is an order "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v). Subject to the principle that the sanction imposed must be no more severe than necessary to achieve the purposes of Rule 37, the selection of an appropriate sanction is committed to the Court's discretion. *Keplar v. Google, LLC*, 346 F.R.D. 41, 54 (N.D. Tex. 2024).

Fifth Circuit case law distinguishes between "lesser sanctions" and "litigation-ending sanctions." *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019). Lesser sanctions, which in effect are any sanction that does not terminate the sanctioned party's case, need only be "just" and "related to the particular claim which was at issue in the order to provide discovery." *Id*. Lesser sanctions do not require a finding of willfulness. *Keplar*, 346 F.R.D. at 54. Even so, the severity of any sanction must remain proportionate to the flagrancy of the discovery misconduct. *See id*. Although prejudice to the moving party is not a required finding for lesser sanctions, the presence of prejudice is relevant to the Court's determination of what sanction is appropriate. *F.D.I.C. v. Conner*, 20 F.3d 1376, 1380 n.3 (5th Cir. 1994). Similarly, although the Court need not find that the sanctioned party acted willfully to impose a lesser sanction, willful violations should ordinarily be met with a more severe sanction than inadvertent sanctions as a question of proportionality. *See Keplar*, 346 F.R.D. at 54.

**i. Dismissing Plaintiffs' personal injury claims is a just and reasonable sanction.**

MARA seeks only to strike Plaintiffs' personal injury claims—the specific claims for which Plaintiffs have failed to provide the discovery ordered by the Court and the very claims most directly dependent on medical records, provider information, and plaintiff-specific injury evidence. This is properly characterized as a "lesser sanction."[16]

The Court gave Plaintiffs additional time to answer discovery after Plaintiffs' counsel represented that his office had already gathered "almost all" responsive medical records, had only a "small handful" of records left to obtain, and expected to be "darn close" to full production within approximately two weeks. Appx. at Ex. A, pp. 5, 8. Plaintiffs did not comply. Instead, what

[16] To resolve any doubt, sister courts of this Court have treated the sanction of striking some, but not all, of a party's claims for relief as a lesser sanction. *See Kamatani v. Benq Corp*., No. CIV.A. 2:03-CV-437, 2005 WL 2455825 at *15, n. 13 (E.D. Tex. Oct. 4, 2005) (sanction involving striking one of a defendant's multiple defenses).

followed was a slow and incomplete trickle of materials from only some Plaintiffs (while many Plaintiffs produced nothing at all). As discussed above, MARA has since requested records directly from healthcare providers through the authorization process, but many records remain outstanding as expert and other deadlines approach.

Under the Fifth Circuit's framework for assessing lesser sanctions, dismissing Plaintiffs' personal injury claims is just because it directly responds to the nature and seriousness of the violation. Plaintiffs have asserted expansive medical damages—alleging that MARA's operations caused a wide range of health conditions—but they have failed to provide the core fact and expert discovery necessary to test those allegations. Where Plaintiffs refuse to provide competent medical evidence linking their alleged conditions to MARA, dismissing the medical claims is an appropriately tailored response. It is precisely the sort of sanction that is "related to the particular claim which was at issue in the order to provide discovery." *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019).

MARA's requested sanction is also measured and proportionate. MARA seeks only to strike the personal injury claims—the claims to which Plaintiffs' noncompliance is the most direct, consequential, and prejudicial. MARA's limited request tracks the principle that sanctions should be proportionate to the misconduct while still serving Rule 37's functions of deterrence, punishment, and ensuring compliance. Because Plaintiffs have failed to provide the discovery necessary to test and defend against claims of medical injuries, they should not be permitted to proceed with those claims.

Although prejudice is not a required element for lesser sanctions, it is undoubtedly relevant to the type and severity of sanction imposed. And the prejudice to MARA is acute. Plaintiffs' personal injury claims are intensely individualized. They turn on each Plaintiff's alleged

symptoms, medical history, treatment, diagnoses, provider communications, and causal attribution. MARA cannot fairly prepare for depositions, site inspections, expert discovery, dispositive motion practice, or trial without this basic discovery.

Similarly, although willfulness is not required for the Court to impose a lesser sanction, the surrounding facts here suggest that Plaintiffs' noncompliance is not inadvertent. Some of the records Plaintiffs eventually produced appear to have existed long before the Court-ordered deadlines. The apparent mismatch between Plaintiffs' representations and their actual production supports a sanction more substantial than a warning or fee award.

For the same reason, a lesser alternative such as monetary sanctions would not substantially achieve the deterrent and remedial purposes of Rule 37. The relevant harm here is not simply that Plaintiffs missed deadlines. It is that Plaintiffs failed to produce the very discovery necessary for MARA to defend against their medical claims while continuing to push those claims forward. A monetary sanction would not restore MARA's lost ability to prepare for expert discovery and depositions in an orderly fashion. Nor would it cure the strategic prejudice created by Plaintiffs' delay. Allowing Plaintiffs to maintain personal injury claims after failing to provide the core discovery underlying such claims would reward the very gamesmanship Rule 37 is designed to prevent.

For the foregoing reasons, dismissing Plaintiffs' personal injury claims with prejudice is a just sanction, closely tied to the discovery Plaintiffs failed to provide, and necessary to address the prejudice caused by Plaintiffs' ongoing noncompliance with this Court's orders. The Court should therefore order such a sanction against Plaintiffs.

### D. In the alternative, the Court Should Enter a *Lone Pine* Order.

If the Court does not dismiss Plaintiffs' personal injury claims with prejudice, it should dismiss them without prejudice and enter a *Lone Pine* Order requiring that certain evidence be provided before Plaintiffs may refile those claims. Any Plaintiff who intends to claim medical injury (either for damages or to illustrate nuisance-type damages), must provide certain preliminary information.[17] In toxic tort cases involving personal injury, *Lone Pine* orders:

> will generally require each plaintiff to make a prima facie showing of causation via expert affidavits and other pertinent evidence identifying: (1) the plaintiff's precise illness suffered; (2) the identity and dose of each chemical to which plaintiff was exposed; (3) the dates and duration of exposure; (4) the pathway of the chemical exposure to plaintiff; and (5) any evidence to support the expert's opinion that exposure to the chemical caused plaintiff's illness.

*Modern Holdings, LLC v. Corning, Inc.*, No. 5:13-CV-405-GFVT, 2015 WL 14079821 at *2 (E.D. Ky. Sept. 28, 2015) (citing *Acuna*, 200 F.3d at 338).

In this case, a *Lone Pine* Order would require Plaintiffs to disclose evidence to support claims of medical injury from the amount and type of sound from MARA's operations sufficient to satisfy both Federal Rule of Evidence 702 and the state law causation standard set forth in *Havner.* Any plaintiff asserting medical injury of any sort would be required to submit sworn affidavits (from a qualified medical professional) stating to a reasonable degree of medical or scientific certainty: (1) general causation or opinion on magnitude of sound and vibration each plaintiff experienced (given the wide range of variables that govern sound exposure such as distance, topography, vegetation, prevailing winds, structures, and more); (2) identification of relevant epidemiological literature establishing, to the required standard, that the conditions of which Plaintiffs complain are known to be caused by a level of sound exposure or vibration; (3)

[17] The Seider Plaintiffs do not seek medical damages.

evidence that Plaintiffs are similarly situated to the subjects in any epidemiological studies; and (4) a specific causation opinion that sound or vibration from MARA's operations was a cause of the particular plaintiff's injuries.

Under Federal Rule of Civil Procedure 16, courts have wide discretion to enter case management orders designed to control complex litigation (including orders requiring plaintiffs to disclose evidentiary support for their claims). *Acuna*, 200 F.3d at 340 (5th Cir. 2000). *Lone Pine* orders are a well-established exercise of that authority and routinely used to require plaintiffs in complex cases to provide proof of exposure, injury, and causation before full discovery proceeds. *See id*; *Hamer v. Liva Nova Deutschland GmbH*, 994 F.3d 173, 179 (3d Cir. 2021) (through *Lone Pine* order "trial courts require plaintiffs to produce threshold *prima facie* support for their claims, such as expert reports and medical records").

In *Acuna,* the Fifth Circuit affirmed use of a pre-discovery order requiring plaintiffs to submit expert affidavits substantiating a link between the injuries plaintiffs alleged and defendant's uranium mining operations. 200 F.3d at 340. The orders fell "under the wide discretion afforded district judges over the management of discovery" and did not impose an improper burden as they "essentially required that information which plaintiffs should have had before filing their claims pursuant to Rule 11(b)(3)." *Id.*

District courts within the Fifth Circuit have applied *Acuna* in a range of contexts. In *Ashford v. Hercules, Inc.*, the court entered a *Lone Pine* order in a 49-plaintiff environmental contamination case involving alleged migration of contaminants from a chemical plant. 2015 WL 6118387, at *3 (S.D. Miss. Oct. 16, 2015). Although plaintiffs argued the number of plaintiffs was too small to warrant such relief, the court rejected the argument—noting that *Lone Pine* orders have been entered in cases with even fewer plaintiffs. *Id.* at *2-3 (describing the forty-nine plaintiffs and

forty-five properties at issue as "substantial numbers" and citing *Baker v. Anschutz Exploration Corp.,* No. 11–CV–6119–CJS, 2013 WL 3282880, at *1, 4 (W.D.N.Y. June 27, 2013) (*Lone Pine* order with fifteen plaintiffs and alleged environmental damage from oil and gas drilling)). The *Ashford* court emphasized that plaintiffs' claims were based largely on proximity and the "suspicion" of contamination rather than evidence, and that plaintiffs had admittedly conducted no testing to confirm contamination. *Id*. at *3. It required each plaintiff to submit expert affidavits attesting to contamination and a plausible migration pathway before other discovery. *Id*. at *2-4. The court found a *Lone Pine* order appropriate to "discern which Plaintiffs have colorable claims before all parties incur substantial expense." *Id*. at *4.

Here, entry of a *Lone Pine* Order is equally merited to discern whether there is evidence supporting all the issues on which Plaintiffs bear the burden of proof—including general and specific causation. There are at least six reasons for the Court to enter such an order.

1. <u>*Lone Pine* orders enforce Rule 11's pre-suit investigation requirement.</u>

A central and widely accepted justification for *Lone Pine* relief is that it enforces—not expands—the obligations imposed by Rule 11 as it merely requires plaintiffs to produce information they were obligated to possess prior to filing suit. *See Acuna*, 200 F.3d at 340; *In re 2000 ExxonMobil Release Litig.*, 2003 WL 27428596, at *2 (M.D. La. Feb. 13, 2003); *Conklin v. Corteva, Inc.*, 782 F.Supp.3d 268, 276 (E.D.N.C. 2025). Plaintiffs must have a factual basis for alleging injury and causation, and "it is not too much to ask a Plaintiff to provide some kind of evidence to support their claim that [Defendant] caused them personal injury." *Modern Holdings, LLC v. Corning Inc.*, 2015 WL 14079821, at *3 (E.D. Ky. Sept. 28, 2015) (citing *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2012 U.S. Dist. LEXIS 56309, at *5 (E.D. La. Apr. 23, 2012)).

Here, Plaintiffs' Complaint alleges that unspecified levels and durations of sound and vibration caused an array of physical and emotional injuries. But, there are no facts alleging that any comparable level of sound or vibration has ever been found to cause these injuries (general causation). Plaintiffs identify no study finding causation of the injuries alleged by noise, much less one that can meet the doubling of the risk standard established in *Havner*. At the same time, Plaintiffs have failed to identify or produce medical records or experts reports showing that any health care professional has attributed any condition to excessive sound or vibration (specific causation). These circumstances cast doubt on the factual and scientific grounds for Plaintiffs' personal injury claims.

2. *Lone Pine* orders serve to identify and cull meritless claims.

The "basic purpose" of a *Lone Pine* order is to cull potentially meritless claims and streamline litigation. *McManaway v. KBR, Inc.*, 265 F.R.D. 384, 384 (S.D. Ind. 2009); *In re Vioxx Prods. Liab. Litig*., 557 F.Supp.2d 741, 743 (E.D. La. 2008) (both citing *Baker v. Chevron USA, Inc.,* 2007 WL 315346, *1 (S.D. Ohio Jan.30, 2007)). This function is particularly important when plaintiffs aggregate claims to obscure individual deficiencies. *Andres v. Town of Wheatfield*, 621 F.Supp.3d 395, 402 (W.D.N.Y. 2022) ("With hundreds of claims, multiple injuries and theories of liability, some mechanism for identifying which claims are likely to proceed is appropriate"). Requiring plaintiff-specific proof allows the court to distinguish viable claims before the parties incur substantial litigation costs. *Modern Holdings*, 2015 WL 14079821 at *1.

Here, Plaintiffs have filed lawsuits for dozens of people who live in Hood County somewhere in the proximity of MARA's business. They fail to plead specific facts that could serve as an evidentiary basis for their generalized belief that the Alleged Sound somehow caused their injuries. The result is that MARA and the Court are left unable to determine which claims, if any,

have evidentiary support. A *Lone Pine* Order would require prompt identification of the specific factual bases for any such claims. This would include identification of all general causation facts, including identification of at least some medical literature that may serve as the basis for expert opinion on general causation, or expert affidavits giving a general causation opinion and the grounds therefor. This is particularly important given the variety and severity of Plaintiffs' alleged injuries, the lack of any pleading of a plausible theory of causation, and the lack of corroborating evidence disclosed in fact and expert discovery.

3. *Lone Pine* orders prevent disproportionate discovery burdens.

*Lone Pine* orders are appropriate when ordinary discovery poses the risk of grossly disproportionate burdens on defendants where plaintiffs may not have sufficient evidence to bring suit. *See Conklin*, 782 F. Supp. 3d at 276-77; *Modern Holdings*, 2015 WL 14079821, at *2-*3. In complex tort cases, defendants can face extensive discovery burdens including document productions, numerous depositions, and significant expert discovery obligations. *See Conklin*, 782 F.Supp.3d at 276-77. Courts recognize that requiring plaintiffs to first produce basic causation evidence will save costs and preserve resources for both the parties and the Court. *Modern Holdings*, 2015 WL 14079821, at *2-*3; *In re 2000 ExxonMobil Release Litig.*, 2003 WL 27428596, at *1-*2.

Here, absent a *Lone Pine* Order, MARA will be forced to conduct discovery relating to individual medical claims of dozens of Plaintiffs including collecting medical records, conducting depositions, and retaining experts to evaluate causation on a plaintiff-by-plaintiff basis. That process is burdensome and costly, particularly given Plaintiffs' failure to provide even threshold evidence of their personal injury claims. Requiring Plaintiffs to produce basic prima facie evidence

now will significantly reduce the scope of necessary discovery and prevent MARA from incurring substantial costs defending claims that may be unsupported.

4. *Lone Pine* orders address asymmetric information.

Another core rationale for a *Lone Pine* Order is the inherent asymmetry of information in complex tort litigation. *See Modern Holdings*, 2015 WL 14079821, at *2-*3. The critical facts regarding exposure, medical history, and injury reside primarily with each plaintiff—not with the defendant. Therefore, requiring plaintiffs to provide basic evidence supporting their claims early is generally fair and efficient where numerous plaintiffs assert diverse injuries. *Id*.

Here, Plaintiffs were obligated to timely collect and produce all relevant evidence substantiating Plaintiffs' alleged injuries: diagnoses, treatment histories, and any medical opinions linking those injuries to the Alleged Sound. Yet, to date, Plaintiffs' disclosures fall far short of satisfying those obligations. Without a *Lone Pine* Order, MARA has been—and will continue to be—required to expend substantial effort and cost, and engage in motion practice, to obtain basic information that Plaintiffs were supposed to have before filing suit.

5. Judicial economy and docket management.

*Lone Pine* orders are grounded in principles of judicial economy and docket control as they allow courts to dispose of meritless claims early and narrow the issues for discovery and trial. *See, e.g.*, *Modern Holdings*, 2015 WL 14079821, at *2 ("a *Lone Pine* Order will save costs and preserve resources for both the parties and the Court").

Here, requiring full discovery to proceed without first determining whether Plaintiffs can substantiate their personal injury claims would impose a significant and unnecessary burden on the Court. This litigation will likely involve numerous individualized disputes over medical records, expert testimony, and causation across dozens of Plaintiffs. A *Lone Pine* Order would

streamline the case by identifying which claims and injuries are supported by basic threshold evidence and which are not, thereby conserving judicial resources and focusing the litigation on genuinely triable issues.

6. <u>Prevent filing of multiple Cases for settlement leverage</u>.

There is power in numbers. The more cases, the more it looks to the jury like defendant did something wrong. District courts have also recognized that aggregating unsupported claims can exert improper settlement pressure on defendants. *See, e.g.*, *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d at 675-76. A *Lone Pine* order mitigates risk by requiring plaintiffs to substantiate their claims and ensuring there is merit to them justifying settlement evaluation. *See Modern Holdings*, 2015 WL 14079821, at *1.

The number of consolidated cases, each with individualized claims, complicates discovery. Without an order requiring automatic disclosure of certain evidence, MARA will be forced to incur significant costs defending claims that ultimately lack support. This also increases pressure to settle, unrelated to case merit.

## III. CONCLUSION

WHEREFORE, Defendant MARA Holdings, Inc. respectfully requests that the Court enter an order excluding any expert testimony offered by Plaintiffs due to their failure to timely designate experts. MARA further requests that the Court dismiss Plaintiffs' Personal Injury Claims with prejudice. Alternatively, if the Court declines to dismiss those claims with prejudice, MARA respectfully requests that the Court dismiss the Personal Injury Claims without prejudice and enter a Lone Pine Order establishing the evidentiary prerequisites Plaintiffs must satisfy before reasserting such claims in this action. MARA further requests all other relief to which it may be justly entitled.

Dated: July 10, 2026

Respectfully submitted,

By: */s/ Robert E. Thackston*

Robert E. Thackston
Texas Bar No. 00785487
Robert.Thackston@nelsonmullins.com
Paula D. Pendley
Texas Bar No. 24123678
Paula.Pendley@nelsonmullins.com
Sabrina A. Focht
Texas Bar No. 24134412
Sabrina.Focht@nelsonmullins.com
Emily Nguyen
Texas Bar No. 24143732
Emily.Nguyen@nelsonmullins.com

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**
3333 Lee Parkway, Suite 750
Dallas, TX 75219
Phone: 469-484-6100
Fax: 469-828-7217

*Counsel for Defendant*
**MARA HOLDINGS, INC.**

**CERTIFICATE OF CONFERENCE**

I hereby certify that I made a good-faith effort to confer with Plaintiffs' counsel regarding Plaintiffs' failure to produce discovery supporting their medical injury claims and regarding the relief sought in this Motion, including dismissal of unsupported medical claims and entry of a Lone Pine Order, in an attempt to resolve these issues without Court intervention.

Specifically, on June 23, 2026, my partner Nilofar Karbassi emailed Plaintiffs' counsel regarding Plaintiffs' failure to provide complete discovery concerning their alleged medical injuries and damages. Defendant explained that many Plaintiffs had not produced meaningful medical records, and some had produced none at all, despite prior representations that medical records were being collected and would be produced. Defendant further advised that the incomplete discovery was prejudicing Defendant's ability to evaluate claims and prepare for depositions and requested deposition and property inspection dates for multiple Plaintiffs.

Thereafter, on June 25, 2026, I emailed Plaintiffs' counsel regarding the relief sought in this Motion. In that correspondence, I advised Plaintiffs' counsel that Defendant intended to move for dismissal of Plaintiffs' medical injury claims based on Plaintiffs' failure to provide the discovery necessary to support those claims. I further explained that Defendant would seek entry of a Lone Pine Order requiring each Plaintiff pursuing personal injury damages to produce prima facie evidence supporting causation, including a qualified medical report addressing: (1) general causation between the alleged sound or vibration and each claimed injury; (2) the authorities relied upon for any general causation opinions; (3) specific causation opinions, including supporting studies and an explanation of their applicability to the individual plaintiff; and (4) exclusion of other known causes of the claimed injuries. I expressly requested Plaintiffs' position regarding the proposed relief and further advised that the parties could avoid motion practice if Plaintiffs agreed to dismiss their unsupported medical claims. Plaintiffs did not respond to the requested relief, and the parties were unable to resolve the dispute without Court intervention, necessitating the filing of this Motion.

Further, on July 2, 2026, my partner Nilofar Karbassi called Plaintiffs’ counsel but was unable to reach him. Thereafter, on July 7, 2026, Ms. Karbassi sent a follow-up email to Plaintiffs’ counsel advising that Defendant was seeking to confer regarding several outstanding issues. Specifically, Ms. Karbassi reiterated Defendant’s intent to move to dismiss Plaintiffs’ personal injury claims or, alternatively, seek entry of a Lone Pine Order based on the grounds previously outlined in Defendant’s June 25 correspondence. Defendant also advised that it intended to seek exclusion of Plaintiffs’ expert opinions based on Plaintiffs’ failure to timely disclose experts. On July 10, 2026, the parties participated in a meet-and-confer telephone conference regarding Defendant’s intent to file its motion to exclude Plaintiffs’ experts and expert testimony, exclude Plaintiffs’ medical claims, and/or seek a Lone Pine order. Plaintiffs indicated they would oppose the requested relief, but represented that they may be willing to dismiss all medical claims. Plaintiffs also requested additional time for further discussions regarding those issues. Although the parties agreed to continue discussions, they were unable to reach an agreement before the filing of this motion.

By: *<u>/s/ Robert E. Thackston</u>*
Robert E. Thackston

**CERTIFICATE OF SERVICE**

The undersigned counsel for Defendant hereby certifies that a true and correct copy of the foregoing document was filed with the Court and served electronically through the CM-ECF (Electronic Case Filing) system to all counsel of record registered to receive a Notice of Electronic Filing for these consolidated cases on this July 10, 2026.

*/s/ Robert E. Thackston*
Robert E. Thackston